IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| GARTH BEARD, | § | |
|    *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:25-cv-222 |
| | § | |
| CROSS ROADS, TEXAS, | § | |
| HALEY HOLBERT, and | § | |
| KRISTOPHER TYLER, | § | |
|    *Defendants*. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

COMES NOW, Garth Beard, complaining of, Cross Roads, Texas, Haley Holbert and Kristopher Tyler, and for cause of action will respectfully show unto the Court as follows:

**"[A] detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop, unless further reasonable suspicion, supported by articulable facts, emerges."**

*United States v. Brigham*, 382 F.3d 500, 507 (5th Cir.2004).

**SUMMARY**

This case involves a straightforward set of facts, all of which were captured on body worn camera, which clearly demonstrate that on June 28, 2023, Officer Haley Holbert and Sergeant Kristopher Tyler of the Cross Roads Police Department illegally prolonged the detention of Garth Beard due to their failure to understand the applicability of Texas Penal Code Section 38.02. This prolonged detention amounts to a violation of Mr. Beard's constitutional rights under the Fourth Amendment to the United States Constitution. Both Officer Holbert and Sergeant Tyler were following Cross Road's unconstitutional policy of demanding people identify themselves without legal authority.

1

# I.
# PARTIES

1. Plaintiff Garth Beard is a resident of Tarrant County, Texas.

2. Defendant Cross Roads, Texas, is a political subdivision of the State of Texas and may be served through the Cross Roads City Manager, Jason Laumer, located at 3201 US 380, Ste 105, Cross Roads, TX 76227, or wherever he may be found.

3. Defendant, Haley Holbert, is an individual residing in Denton County, Texas who at all relevant times was an officer employed with the city of Cross Roads Police Department. She may be served at her place of employment at the Cross Roads Police Department located at 1401 FM424, Cross Roads, TX 76227, or wherever she may be found. Defendant Holbert is being sued in her individual capacity.

4. Defendant, Kristopher Tyler, is an individual residing in Denton County, Texas who at all relevant times was a Sergeant employed with the city of Cross Roads Police Department. He may be served at his place of employment at the Cross Roads Police Department located at 1401 FM424, Cross Roads, TX 76227, or wherever he may be found. Defendant Tyler is being sued in his individual capacity.

# II.
# JURISDICTION AND VENUE

5. The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343 since Plaintiff is suing for relief under 42 U.S.C. § 1983.

6. Venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. § 1391 because the Defendants are domiciled and/or reside in the Eastern District of Texas, and all or a substantial part of the causes of action accrued in the Eastern District of Texas.

## III.
## FACTS AND ALLEGATIONS

7. On June 28, 2023, Officer Haley Holbert of the Cross Roads Police Department made contact with Garth Beard's vehicle, which was parked in the Walmart parking lot, to investigate a dog being locked inside of a possibly unairconditioned vehicle.

8. Shortly after Officer Holbert's contact with his vehicle, Mr. Beard exited Walmart and approached his vehicle as well as Officer Holbert.

9. Officer Holbert explained the reason for her presence as she was investigating possible animal cruelty due to a dog being inside of a parked car.

10. Officer Holbert directed Mr. Beard to roll his windows down and step away from the vehicle.

11. Mr. Beard was detained at this time while Officer Holbert investigated.

12. However, Officer Holbert quickly learned that the dog was fine.

13. At this point, the reason for the detention had ended and Mr. Beard should have been permitted to leave.

14. At the 22:34:54 timestamp of her body worn camera video, Officer Holbert told Mr. Beard she needed to <u>identify him for "documentation purposes."</u>

15. She knew at that point that Mr. Beard had not committed a crime.

16. Mr. Beard respectfully and calmly stated that he was not required to identify himself and was not wishing to do so.

17. At that point Mr. Beard should have been released.

18. However, Officer Holbert would not let Mr. Beard leave without identifying himself.

19. His prolonged detention was a violation of his Fourth Amendment rights.

20. Sergeant Kristopher Tyler was called to the scene due to Mr. Beard choosing not to identify himself – which was permissible under the law since Mr. Beard was not under arrest.

21. After arriving, Sergeant Tyler told Mr. Beard, "Here's the deal, as soon as you give your ID and we're done, you're gone."

22. Sergeant Tyler told Mr. Beard that he was lawfully detained, and that Mr. Beard needed to identify himself.

23. Mr. Beard calmly explained to the officers that he did not need to identify himself unless he was under arrest – which is exactly what the law says.

24. Mr. Beard referenced the Failure to Identify statute – Texas Penal Code Section 38.02 – and asked the officers to look it up because they were incorrect on what it stated.

25. Eventually Mr. Beard looked up the statute on his phone and read it to the officers, who continued to misapply the rules, resulting in an even longer detention.

26. The officers finally walked away from Mr. Beard to have a discussion and decided to let him leave without identifying himself – which is exactly what the law requires and exactly what Mr. Beard not only explained, but read, to the officers.

27. Sergeant Tyler even states during the interaction when releasing Mr. Beard that the animal was OK – clearly indicating that he was aware no crime had been committed.

28. However, the detention was prolonged until 23:05:21 of the body worn camera when Sergeant Tyler finally told Mr. Beard he was free to go.

29. This was thirty minutes of wrongful detention.

30. Cross Roads Police Chief Shaun Short sent Mr. Beard a letter explaining the "shortcomings" of Officer Holbert and Sergeant Tyler. Below are three paragraphs from that letter.

> You were sent an email on June 30 notifying you this event had been reviewed (after action review) on the morning of June 29 with some shortcomings identified and addressed. Those shortcomings included employee knowledge regarding the application of two statutes, TX PC 38.02 Failure to Identify and TX PC 42.092 Cruelty to Nonlivestock Animals as well as the duration of your detention.
>
> First, and most significantly, TX PC 38.02 Failure to Identify was initially misinterpreted. This is a rarely used statute by the Cross Roads Police Department and in fact during the 22 months the Cross Roads Police Department has existed, to my knowledge, we have never arrested anyone for that offense. You were detained as the result of your leaving your animal locked in a vehicle on a summer evening, you were not arrested, handcuffed, or charged with Fail to Identify, that said, there was admittedly an unreasonably long discussion of the Fail to Identify statute.
>
> On the evening this occurred there was a legitimate law enforcement purpose for our officer's presence, investigation of a criminal violation, TX PC 42.092 Cruelty to Nonlivestock Animals. Denton County Dispatch received the call at 9:14pm., Officer Holbert arrived at 9:24pm. When she arrived, she discovered your dog was confined in a parked, closed vehicle with no one around. She observed the animal moving but could determine little more. You arrived about 9:30pm., opened the door, and alleviated her concern that the animal was presently in danger.

31. This indicates that Officer Holbert knew that there was no concern about the dog's danger after Mr. Beard opened the door for her to see the dog.

32. Notably, Chief Short also stated that "there was admittedly an unreasonably long discussion of the Fail to Identify statute." This was because "TX PC 38.02 Failure to Identify was initially misinterpreted."

33. This "unreasonably long discussion" was also an unreasonably prolonged detention in violation of Mr. Beard's constitutional rights.

34. Interestingly, Chief Short blamed the duration of the detention on Mr. Beard for being uncooperative by not identifying himself – which Chief Short ultimately admits Mr. Beard had no obligation to do.

35. However, Chief Short stated that the <u>purpose for establishing Mr. Beard's identity was to document the event</u> – this is simply not what the law allows. See Tex. Penal Code Ann. § 38.02.

36. Below is another paragraph from Chief Short's letter to Mr. Beard.

> The duration of your detention was partially attributable to your lack of cooperation (officers' perception, you absolutely have a right to disagree, not identify yourself or ask questions about a detention). The purpose for establishing your identity was to document the event so that you could be released, the incident could be reviewed and investigated later if appropriate. That said, officers should have worked more quickly through the Animal Cruelty Investigation and not permitted themselves to be derailed by your assertion of your right to not identify yourself – which as noted, was not required. I do appreciate your patiently standing outside your vehicle on such a hot evening while officers worked through this.

37. Texas Penal Code Section 38.02, Failure to Identify, states the following:

   (a) A person commits an offense if he intentionally refuses to give his name, residence address, or date of birth to a peace officer <u>who has lawfully arrested the person</u> and requested the information.

   (b) A person commits an offense if he intentionally gives a false or fictitious name, residence address, or date of birth to a peace officer who has:

   (1) lawfully arrested the person;

   (2) lawfully detained the person; or

   (3) requested the information from a person that the peace officer has good cause to believe is a witness to a criminal offense.

Tex. Penal Code Ann. § 38.02.

38. Here, initially, Mr. Beard was lawfully detained pursuant to an investigation into the call regarding his dog.

39. However, once Mr. Beard opened the door to his vehicle, Officer Holbert's concerns were alleviated, and she knew no crime had been committed.

40. While Mr. Beard was lawfully detained, he was not required to identify himself.

41. Once he the investigation into the health and safety of the dog ended, Mr. Beard should have been released.

42. Refusing to release him, for the purpose of obtaining his identification was unreasonable.

43. The Defendants were acting under color of state law at all times relevant to this case, as they were on duty, responding to a call for service, and detaining Mr. Beard.

## IV.
## CAUSES OF ACTION

### Count One

### Illegally Prolonged Detention
### Violation of the Fourth Amendment Pursuant to 42 U.S.C § 1983
### Against Defendant Holbert and Defendant Tyler

44. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

45. No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, to be free from all restraint or interference of others, unless by clear and unquestionable authority of law. *Terry v. Ohio*, 392 U.S. 1, 9 (1968).

46. Defendant Holbert and Defendant Tyler deprived Mr. Beard of his constitutionally protected right to be free from unreasonable seizures under the Fourth Amendment by unlawfully detaining him by way of illegally prolonging the detention so that they could illegally demand Mr. Beard identify himself, despite lacking the requirement to do so under Texas Penal Code Section 38.02 – as Mr. Beard was not lawfully arrested at the time.

47. Unlawful detention implicates the Fourth Amendment's proscription against unreasonable seizures. *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 845 (5th Cir. 2009) *See Terry*, 392 U.S. at 16 ("[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person.").

48. Under the two-part *Terry* reasonable suspicion inquiry, the court must determine whether the officer's action was: (1) "justified at its inception"; and (2) "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio*, 392

U.S. 1, 19-20 (1968); *United States v. Brigham*, 382 F.3d 500, 506-07 (5th Cir.2004) (en banc); *U.S. v. Lopez–Moreno*, 420 F.3d 420, 429–434 (5th Cir.2005).

49. As for the second prong of the *Terry* inquiry, generally, the "detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop, unless further reasonable suspicion, supported by articulable facts, emerges." *Brigham*, 382 F.3d at 507.

50. The Court must determine whether the search and seizure was reasonably related, in scope, to the circumstances that justified the stop in the first place. *Kothe v. State,* 152 S.W.3d 54, 62 (Tex. Crim. App. 2004). In making this determination the scope of a *Terry* investigative stop can last no longer than necessary to effect the purpose to stop. *See id.*

51. For example, a seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission. *Illinois v. Caballes*, 543 U.S. 405, 407, 125 S. Ct. 834, 837, 160 L. Ed. 2d 842 (2005).

52. After completion of the purposes of the initial stop, the officer must have reasonable suspicion to believe that further criminal activity has occurred or is being committed to justify further detention of the suspect. *See Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997) (en banc); *McQuarters v. State*, 58 S.W.3d 250, 255 (Tex. App.—Fort Worth 2001, pet. ref'd; *Sieffert v. State*, 290 S.W.3d 478, 485–86 (Tex. App.—Amarillo 2009, no pet.)).

53. In other words, once the original purpose for the stop is exhausted, police may not unnecessarily detain drivers solely in hopes of finding evidence of some other crime. *Kothe*, 152 S.W.3d at 64.

54. Here, Defendant Holbert and Defendant Tyler intentionally detained Plaintiff without a warrant, without Plaintiff's consent, and without any legal justification as Defendant

Holbert and Defendant Tyler prolonged the detention so that they could illegally demand Mr. Beard identify himself, despite lacking the requirement to do so under Texas Penal Code Section 38.02 – as Mr. Beard was not lawfully arrested at the time.

55. Plaintiff did not consent to his confinement and was conscious of it.

56. Neither Defendant Holbert nor Defendant Tyler had probable cause nor reasonable suspicion to support the prolonged detention of Plaintiff.

57. By knowingly and intentionally prolonging Plaintiff's detention without consent, without probable cause, and without legal justification, Defendant Holbert and Defendant Tyler deprived Plaintiff of his Fourth Amendment right to be free from unreasonable seizures.

58. As a result of the illegal detention, Plaintiff suffered injuries to his liberties when Defendant Holbert and Defendant Tyler deprived Plaintiff of his civil, constitutional, and statutory rights and they are both liable to Plaintiff under 42 U.S.C. § 1983.

**Count Two**

**PRACTICE AND CUSTOM OF DELIBERATE INDIFFERENCE**
*Monell v. New York City Department of Social Services*
**Violation of the Fourth Amendment
Pursuant to 42 U.S.C § 1983
Defendant Cross Roads, Texas**

59. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

60. Municipalities, including counties and cities, may be held liable under § 1983. *Hampton Co. Nat'l Sur., LLC v. Tunica Cty.*, 543 F.3d 221, 224 (5th Cir. 2008).

61. A municipality may be liable under § 1983 if the execution of one of its customs or policies deprives a plaintiff of his or her constitutional rights. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690–91 (1978).

62. Municipal liability may attach where the constitutional deprivation is pursuant to a governmental custom, even if such custom has not received formal approval. *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 166 (5th Cir. 2010) (citing *Monell*, 436 U.S. at 690–91)).

63. "Under the decisions of the Supreme Court and [the Fifth Circuit], municipal liability under section 1983 requires proof of three elements: a policy maker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell*, 436 U.S. at 694)).

64. The plaintiff may demonstrate a "persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Zarnow*, 614 F.3d at 168–69 (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir.1984)).

65. A municipality "cannot be liable for an unwritten custom unless '[a]ctual or constructive knowledge of such custom' is attributable to a city policymaker." *Pena v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018) (citing *Hicks–Fields*, 860 F.3d at 808)).

66. To establish municipal liability under § 1983 based on an alleged "persistent widespread practice or custom that is so common it could be said to represent municipal policy, actual or constructive knowledge of such practice or custom must be shown." *Malone v. City of Fort Worth*, 297 F. Supp. 3d 645, 654 (N.D. Tex. 2018) (citing *Hicks–Fields*, 860 F.3d at 808)).

67. "Constructive knowledge may be attributed to the governing body on the ground that it would have known of the violations if it had properly exercised its responsibilities…" *Hicks–Fields v. Harris Cty.*, 860 F.3d 803, 808 (5th Cir. 2017).

68. The § 1983 causation component requires that the plaintiff identify, with particularity, the policies or practices they allege cause the constitutional violation, and demonstrate a "direct causal link." *M. D. by Stukenberg v. Abbott*, 907 F.3d 237, 255 (5th Cir. 2018); See *Piotrowski v. City of Houston*, 237 F.3d 567, 580 (5th Cir. 2001)). The Fifth Circuit does not, however, require the court to consider each policy or practice in a vacuum. *Id*. The court may properly consider how individual policies or practices interact with one another within the larger system and how the harmful effects of some policies are exacerbated by others. *Id*.

69. The Supreme Court has described an actionable *Monell* policy as "a course of action consciously chosen among various alternatives." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823, 105 S. Ct. 2427, 2436, 85 L. Ed. 2d 791 (1985).

### City's Policymakers with Regard to the Police Department were the City Council and the Police Chief

70. The identification of policymaking officials is a question of state law. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988).

71. Because the "specific identity of the policymaker is a legal question that need not be pled," plaintiffs can state a claim for municipal liability as long as they plead sufficient facts to allow the court to reasonably infer that the Board either adopted a policy that caused M.L.'s injury or delegated to a subordinate officer the authority to adopt such a policy. *Longoria Next Friend of M.L. v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 271 (5th Cir. 2019); quoting *Groden v. City of Dallas*, 826 F.3d 280, 284, 286 (5th Cir. 2016)).

72. In other words, plaintiffs must plead facts that sufficiently connect the policymaker […] to the allegedly unconstitutional policy […]. *Id*.

73. Here, the Town Council is the policymaker for the City of Cross Roads who is responsible for the policies of the Cross Roads Police Department.

74. The Town Council had constructive knowledge of the City's customs, practices, and *de facto* policies regarding demanding that people identify themselves in violation of the requirements of the Failure to Identify statute and failing to adequately train officers on when someone must identify under the Failure to Identify statute, as they would have known of the violations if they would have properly exercised their responsibilities." *Hicks–Fields*, 860 F.3d at 808.

75. Alternatively, the City Council, as policymaker for the City, delegated policymaking authority to promulgate, adopt, approve, or ratify the *de facto* policies regarding demanding that people identify themselves in violation of the requirements of the Failure to Identify statute and failing to adequately train officers on when someone must identify under the Failure to Identify statute, to Police Chief Shaun Short for the Cross Roads Police Department. *Longoria Next Friend of M.L.*, 942 F.3d at 271; quoting *Groden*, 826 F.3d at 284, 286.

## City's Practice of Illegally Detaining People To Force them to Identify

76. The City, under the direct supervision of the City's policymakers – the City Council and the Chief of Police, maintained, implemented, encouraged, and ratified the following unconstitutional policies and practices, with deliberate indifference to the constitutional violations that they were directly causing and would continue to directly cause, such as the illegally prolonged detention of Mr. Beard by Defendants Holbert and Tyler in this case:

   a. Forcing people to identify and illegally detaining them until they identify in violation of the requirements of the Failure to Identify statute; and

   b. Failing to adequately train the City's police officers on the law regarding the criminal offense of Failure to Identify so that the officers will understand when they can force someone to identify pursuant to the statute, despite knowing that this lack

of training will result in unconstitutional and illegally prolonged detentions such as Mr. Beard's in this case.

### City's Failure to Train Regarding Requirements for an Arrest for Failure to Identify

77. To plead a plausible failure-to-train claim, a plaintiff must allege sufficient facts to show: "(1) the training procedures were inadequate; (2) the [city's] policymaker was deliberately indifferent in adopting the training policy; and (3) the inadequate training policy directly caused [the plaintiff's] injury." *Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011).

78. The City's training procedure was inadequate when it came to training the City's police officers on the law regarding the criminal offense of Failure to Identify and the requirements necessary to force someone to identify themselves, so that the officers will understand when they can continue to detain people while forcing them to identify, like Mr. Beard in this case.

79. The City, under the direct supervision of the City's policymakers – the City Council and/or Police Chief, maintained, implemented, encouraged, and ratified the unconstitutionally inadequate training regarding illegally detaining people to illegally force them to identify, with deliberate indifference to the constitutional violations that they were directly causing and would continue to directly cause, such as the illegally prolonged detention of Mr. Beard in this case.

### Facts Supporting *Monell* Claims Against the City

80. Officer Holbert told Mr. Beard she needed to identify him for "documentation purposes" despite knowing at that time that no crime was committed and he should be released.

81. Sergeant Tyler told Mr. Beard that he was lawfully detained and that Mr. Beard needed to identify himself, when he said, "Here's the deal, as soon as you give your ID and we're done, you're gone."

82. Mr. Beard calmly explained to the officers that he did not need to identify himself unless he was under arrest – which is exactly what the law says.

83. Mr. Beard referenced the Failure to Identify statute and asked the officers to look it up because they were incorrect on what it stated. Eventually Mr. Beard looked up the statute and read it to the officers who continued to misapply the rules, resulting in an even longer detention.

84. Cross Roads Police Chief Shaun Short sent Mr. Beard a letter explaining the "shortcomings" of Officer Holbert and Sergeant Tyler. Below are three paragraphs from that letter.

> You were sent an email on June 30 notifying you this event had been reviewed (after action review) on the morning of June 29 with some shortcomings identified and addressed. Those shortcomings included employee knowledge regarding the application of two statutes, TX PC 38.02 Failure to Identify and TX PC 42.092 Cruelty to Nonlivestock Animals as well as the duration of your detention.
>
> First, and most significantly, TX PC 38.02 Failure to Identify was initially misinterpreted. This is a rarely used statute by the Cross Roads Police Department and in fact during the 22 months the Cross Roads Police Department has existed, to my knowledge, we have never arrested anyone for that offense. You were detained as the result of your leaving your animal locked in a vehicle on a summer evening, you were not arrested, handcuffed, or charged with Fail to Identify, that said, there was admittedly an unreasonably long discussion of the Fail to Identify statute.
>
> On the evening this occurred there was a legitimate law enforcement purpose for our officer's presence, investigation of a criminal violation, TX PC 42.092 Cruelty to Nonlivestock Animals. Denton County Dispatch received the call at 9:14pm., Officer Holbert arrived at 9:24pm. When she arrived, she discovered your dog was confined in a parked, closed vehicle with no one around. She observed the animal moving but could determine little more. You arrived about 9:30pm., opened the door, and alleviated her concern that the animal was presently in danger.

85. Notably, Chief Short also stated that "there was admittedly an unreasonably long discussion of the Fail to Identify statute." This was because "TX PC 38.02 Failure to Identify was initially misinterpreted."

86. This "unreasonably long discussion" was also an unreasonably prolonged detention in violation of Mr. Beard's constitutional rights.

87. Interestingly, Chief Short blamed the duration of the detention on Mr. Beard for being uncooperative by not identifying himself – which Chief Short ultimately admits Mr. Beard had not obligation to do.

88. However, Chief Short stated that the purpose for establishing Mr. Beard's identity was to document the event – this is simply not what the law allows.

89. Clearly the Chief of Police even thinks that people can be detained until they identify themselves for documentation purposes.

90. Below is another paragraph from Chief Short's letter to Mr. Beard.

> The duration of your detention was partially attributable to your lack of cooperation (officers' perception, you absolutely have a right to disagree, not identify yourself or ask questions about a detention). The purpose for establishing your identity was to document the event so that you could be released, the incident could be reviewed and investigated later if appropriate. That said, officers should have worked more quickly through the Animal Cruelty Investigation and not permitted themselves to be derailed by your assertion of your right to not identify yourself – which as noted, was not required. I do appreciate your patiently standing outside your vehicle on such a hot evening while officers worked through this.

91. Texas Penal Code Section 38.02, Failure to Identify, states the following:

(a) A person commits an offense if he intentionally refuses to give his name, residence address, or date of birth to a peace officer <u>who has lawfully arrested the person</u> and requested the information.
(b) A person commits an offense if he intentionally gives a false or fictitious name, residence address, or date of birth to a peace officer who has:
    (1) lawfully arrested the person;
    (2) lawfully detained the person; or
    (3) requested the information from a person that the peace officer has good cause to believe is a witness to a criminal offense. Tex. Penal Code Ann. § 38.02

92. Based off Chief Short's admission, upon information and belief, discovery into information within the knowledge of the City will show that there are more instances of people being forced to identify and their detentions being illegally prolonged in order to do so despite requirements under the Failure to Identify statute not being met – such as formal arrest.

93. Mr. Beard's injuries were not caused by any other means.

## V.
## DAMAGES

94. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

95. Plaintiff's injuries were a foreseeable event. Those injuries were directly and proximately caused by the illegally prolonged detention by Defendants Holbert and Tyler as a direct result of the Cross Roads, Texas' unconstitutional identification policy and failure to train officers and supervisors on Texas Penal Code § 38.02.

96. As a result, Plaintiff is entitled to recover all actual damages allowed by law.

97. Plaintiff contends Defendants' conduct constitutes reckless indifference to Plaintiff's constitutionally protected rights. Thus, Plaintiff is entitled to punitive damages against Defendant Holbert and Defendant Tyler.

98. As a direct and proximate result of the occurrence which made the basis of this lawsuit, Plaintiff was forced to suffer:

    a. Emotional distress, torment, and mental anguish; and

    b. Deprivations of his liberty.

99. Pursuant to 42 U.S.C. § 1983 and § 1988, Plaintiff seeks to recover, and hereby requests the award of punitive damages, reasonable attorney's fees, and costs of court.

## VI.
## ATTORNEY'S FEES

100. If Plaintiff prevails in this action, by settlement or otherwise, Plaintiff is entitled to and hereby demands attorney's fees under 42 U.S.C. §1988.

## VII.
## JURY REQUEST

101. Plaintiff respectfully requests a jury trial.

# **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that judgment be rendered against Defendants, for an amount in excess of the jurisdictional minimum of this Court. Plaintiff further prays for all other relief, both legal and equitable, to which he shows himself justly entitled.

Respectfully submitted,

*/s/ James P. Roberts*
JAMES P. ROBERTS,
Texas Bar No. 24105721
SCOTT H. PALMER,
Texas Bar No. 00797196
BREANTA BOSS,
Texas Bar No. 24115768

PALMER PERLSTEIN
15455 Dallas Parkway, Suite 540
Addison, Texas 75001
Telephone: 214.987.4100
Facsimile: 214.922.9900
james@palmerperlstein.com
scott@palmerperlstein.com
breanta@palmerperlstein.com

**COUNSEL FOR PLAINTIFF**